UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Lionell Fraction,

               Petitioner,

  vs.                          REPORT AND RECOMMENDATION

Joan Fabian,

               Respondent.      Civ. No. 04-3030 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2254.

The Petitioner appears by Bradford W. Colbert, Esq.; and the Respondent appears by Thomas R. Ragatz, Assistant Minnesota Attorney General.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

II.  <u>Factual Background</u>

The Petitioner is a State Prisoner, who is presently incarcerated at the Minnesota Correctional Facility in Moose Lake, Minnesota.  The Petitioner's incarceration is the result of his conviction, in the Minnesota State District Court for Stearns County, Minnesota, following a Jury Verdict, in which the Petitioner was found guilty of one Count of racketeering, one Count of first degree controlled substance crime committed for the benefit of a gang, and three Counts of controlled substance crime committed for the benefit of a gang.  The Court sentenced the Petitioner to 150 months for the racketeering offense, and 68, 90, 110, and 170 months, respectively, for each of the controlled substance offenses.   However, the sentence was later vacated by the Minnesota Court of Appeals, and it now appears, based on the Petitioner's representations, that his entire sentence for the convictions is 150 months.

As is the standard practice, the Jury panel in the Petitioner's case was chosen following extensive inquiry -- in the form of Juror Questionnaires and <u>voir dire</u> -- into the attitudes and biases of prospective Jurors.  In this instance, the Juror Questionnaire contained an inquiry into whether there was anything about the Jurors' experiences or relationships with African American people that would cause them to treat the accused more or less favorably than other defendants.  The purpose of the question was to

reveal any potential biases that members of the Jury panel might have towards the Petitioner, and his co-Defendant, who are both African Americans.

As is relevant here, one of the prospective Jurors answered this question affirmatively, then went on to explain: "I lived in Florida for three years and we lived around black people and they just hang around and do nothing." [T. 564]. The prospective Juror also related some negative events that he had experienced with African American people, while riding the school bus when he was younger. During voir dire, counsel for each of the co-defendants, and counsel for the State, questioned the prospective Juror about his answers in the Questionnaire. The prospective Juror stated that he had probably misinterpreted the question [T. 564]; that his experiences in Florida occurred approximately 15 years ago [T. 566]; that those experiences would not effect his decisionmaking in Court [T. 565]; and that, despite his previous experiences, he could be a fair and impartial Juror, in a case which involved two African American co-defendants.

Following voir dire, the Petitioner's counsel, as well as counsel for his co-Defendant, moved to strike the prospective Juror for cause. The State did not join in that Motion but, instead, urged that the voir dire established that the prospective Juror would be able to be fair and impartial in weighing the facts presented to him, and in

rendering a Verdict. While neither the arguments of counsel, nor the reasoning of the Trial Judge, appear in the Record presented, we do know that the Trial Judge denied the Petitioner, and his co-Defendant's, Motion to Strike the prospective Juror for cause. Thus, since neither the Petitioner, nor his co-Defendant, utilized one of their peremptory challenges, the prospective Juror was chosen to sit on the Jury, which then rendered the Verdict against the Petitioner.

The Petitioner subsequently appealed both his conviction, and sentence, to the Minnesota Court of Appeals. See, State v. Fraction, 2002 WL 31748928 (Minn. App., December 10, 2002), review denied (Minn. February 18, 2003), cert. denied, 539 U.S. 965 (2003). Among the arguments made to the Court of Appeals was that the Trial Court's refusal to strike the Juror for cause deprived him of his right to a fair and impartial Jury. The Court addressed that argument, reiterating the following standard of review:

> In determining whether to dismiss a potential juror for cause, the district court must decide whether the juror "can set aside his or her impression or opinion and render an impartial verdict." State v. Drieman, 457 N.W.2d 703, 708 (Minn. 1990) (citation omitted). Because a determination of impartiality is essentially one of credibility, and the district court is in the best position to evaluate the testimony and demeanor of potential jurors, we review a district court's refusal to remove a juror for cause with special deference.

> State v. Logan , 535 N.W.2d 320, 323 (Minn. 1995).
> Accordingly, we will not lightly substitute our judgment for
> that of the district court.  Drieman, 457 N.W.2d 708-09.

Id., at *5.

Applying this standard, the Court of Appeals determined that the Trial Court did not

abuse its discretion when it concluded that the Juror was capable of setting aside any

impressions that he had previously formed about African Americans, and of rendering

a Verdict based on the evidence presented.  Id. at *6.  The Court also refused to

adopt the "implied bias doctrine" that was advanced by the Petitioner, which provided

that a racial bias is a "defect in reasoning" and, as a result, an individual who reveals

a racial bias must automatically be excused from a Jury.  Id.

In making its decision, the Court of Appeals looked to the information that was

before the Trial Court at the time of its ruling.  Notably, that information was not

limited to the Juror's answer to the Questionnaire, but also included his "unequivocal

responses to extensive questioning by both the prosecutor and defense counsel."  Id.

The Court further noted that the Trial Court had dismissed forty-three (43) prospective

Jurors for cause; had granted four out of five of the Petitioner's. and his co-

Defendant's, Motions to Strike other jurors for cause; and that neither the Petitioner,

nor his co-Defendant, used their peremptory challenges to strike the Juror in question.

Following the Court of Appeals' decision, the Petitioner sought review from both the Minnesota Supreme Court, and the United States Supreme Court.   His Petition for Review to the Minnesota Supreme Court was denied on February 18, 2003, and his Petition for a Writ of Certiorari was denied on June 27, 2003.  State v. Fraction, 539 U.S. 965 (2003).   The Petitioner then filed his Petition for a Writ of Habeas Corpus on June 23, 2004.   The sole contention raised in his Petition is that he was denied his Sixth Amendment Right to a fair and impartial Jury by the Trial Court's refusal to strike the Juror for cause.

## II.  Discussion

A.     Standard of Review.   "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Title 28 U.S.C. §2254(a).   "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.   Id.; see also, Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir.

1994); <u>Maynard v. Lockhart</u>, 981 F.2d 981, 986 (8th Cir. 1992); <u>Garcia v. Powers</u>, 973 F.2d 684, 685 (8th Cir. 1992).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court.   See, <u>Antiterrorism and Effective Death Penalty Act of 1996</u>, Pub. L. No. 104-132, 110 Stat. 1214 (1996).   A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

<u>Title 28 U.S.C. §2254(d)</u>.

In a recent Supreme Court decision, the Court explained that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the

State Courts.  <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  The Court went on to instruct

as follows:

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrive[d] at a conclusion
> opposite to that reached by [the Supreme Court] on a
> question of law or if the state court decide[d] a case
> differently than [the Supreme Court] has on a set of
> materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifie[d] the correct governing legal
> principle from [the Supreme Court's] decisions but
> unreasonably applie[d] that principle to the facts of the
> prisoner's case.

<u>Id.</u> at 412-13.

The Court further explained that a consideration of a State Court's decision, under the

"unreasonable application" clause, requires a Federal Court to "ask whether the state

court's application of clearly established federal law was objectively unreasonable."

<u>Id.</u> at 409.

Under this heightened standard of review, a Federal Court "may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state court decision applied clearly established federal law erroneously or incorrectly,"

but "[r]ather, that application must also be unreasonable."  <u>Id.</u> at 411; see also, <u>Siers</u>

<u>v. Weber</u>, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of <u>Williams</u> on

- 8 -

Habeas proceedings); <u>Newman v. Hopkins</u>, 247 F.3d 848, 850-51 (8th Cir. 2001);

<u>Copeland v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000).

As a consequence, <u>Williams</u> affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law, whereas the "unreasonable application" clause addressed mixed questions of fact and law. See, <u>Evans v. Rogerson</u>, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for <u>Miranda</u> purposes is a mixed question of law and fact that is properly reviewed under the "unreasonable application clause of §2254(d)(1)"); <u>Becerrill v. Sternes</u>, 2001 WL 1669398 at *3 (7th Cir., December 14, 2001)(District Court improperly analyzed question of fact under "unreasonable application" clause, believing it to be a mixed question of law and fact). Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. Despite this presumption, Section 2254(d)(2) authorizes the issuance of a

Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001); <u>McDonald v. Bowersox</u>, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" <u>Kinder v. Bowersox</u>, supra at 538, citing <u>Title 28 U.S.C. §2254(e)(1)</u>.

B.   <u>Legal Analysis</u>.   The only basis advanced by the Petitioner for Habeas Corpus relief is his argument that the Trial Court's failure to strike the Juror for cause deprived him of his right to a fair and impartial Jury under the Sixth Amendment.   As stated by the Supreme Court, the question of whether a Juror is impartial is "plainly one of historical fact: did the juror swear that he could set aside any opinion that he might hold and decide the case on the evidence, and should the juror's protestations of impartiality be believed." <u>Patton v. Yount</u>, 467 U.S. 1025, 1036 (1984).   Thus, the Trial Court's findings as to a Juror's impartiality are entitled to the presumption of correctness provided in Section 2254(e)(1).   <u>Wainright v. Witt</u>, 469 U.S. 412, 429

- 10 -

(1985); <u>Patton v. Yount</u>, supra at 1036-37; <u>Pruett v. Norris</u>, 153 F.3d 579, 587 (8ᵗʰ Cir. 1998); <u>Lowe-Bey v. Groose</u>, 28 F.3d 816, 820 (8ᵗʰ Cir. 1994) ("[A] state court's findings on jury partiality are entitled to a statutory presumption of correctness."), citing <u>Patten v. Yount</u>, supra at 1037-1040.

Here, the Trial Court determined that the Juror would be able to set aside any impressions that he had previously formed about African-Americans, and render a fair and impartial Verdict based on the evidence presented in Court.  The Trial Court's determination was largely based on the Juror's responses to numerous and extensive <u>voir dire</u>, in which the Juror stated that he probably misunderstood the question on the Juror Questionnaire; that he would not be affected by his previous experiences with African Americans; and that he could fairly and impartially decide the issues of the case based on the evidence that was presented at Trial.  Using a similarly deferential standard to that espoused by Federal law, see <u>Mu'Min v. Virginia</u>, 500 U.S. 415, 428 (1991)("A trial court's findings of juror impartiality 'may be overturned only for manifest error.'") [internal quotations omitted], the Minnesota Court of Appeals upheld the Trial Court's decision, saying, "[w]hile we may have exercised our discretion differently, the record does not support a determination that the district court abused its discretion."

Based on the Record presented, we find the Trial Court's findings to be reasonable, and the Plaintiff has failed to present clear and convincing evidence that the determination of impartiality, which was made by the Trial Court, and ratified on appeal, was incorrect.  In particular, the Juror's responses during <u>voir</u> <u>dire</u> -- which the Trial Court determined to be credible -- were sufficient to establish the Juror's impartiality.   Therefore, we find no merit in the Petitioner's assertion that Habeas Corpus relief is warranted by the Trial Court's finding that the Juror was capable of impartiality.

The Petitioner has also urged that we adopt a <u>per</u> <u>se</u> rule that bars any person who reveals a racial stereotype, from serving on a Jury.  Since we interpret this argument as one challenging the legal standard utilized by the Trial Court for determining the Juror's suitability, we review it under the "clearly established" prong of Section 2254.  In doing so, we note that, while the Petitioner has identified other jurisdictions that have adopted such a rule, it was expressly rejected by the Minnesota Court of Appeals during the Petitioner's direct appeal.  Further, as is more pertinent to our review, the Petitioner has failed to identify, nor has our independent research revealed, any United States Supreme Court precedent that adopts such a position, or

distinguishes the standard adopted in <u>Patton</u>, based on the alleged bias being racially motivated.

Based on the Record before us, both the Trial Court, and the Minnesota Court of Appeals, applied principles of law that were plainly consistent with clearly established Federal law. Further, the Petitioner has failed to provide clear and convincing evidence that Trial Court's evaluation of the Juror's impartiality was in error, or was somehow unreasonable. Therefore, we recommend that the Petitioner's Petition for a Writ of Habeas Corpus be denied.

NOW, THEREFORE, It is –

RECOMMENDED:

That the Petitioner's Application for Habeas Corpus Relief under Title 28 U.S.C. §2254 [Docket No. 1] be dismissed.

Dated: February 14, 2004        s/Raymond L. Erickson
                            Raymond L. Erickson
                                UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than March**

**4, 2005** a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than March 4, 2005,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to

review the transcript in order to resolve all of the objections made.

- 14 -